UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | : |
| | : |
| v. | : Case No. 25-CR-00236 (JMC) |
| | : |
| DAMION BARNETT, | : |
| Defendant. | : |

**GOVERNMENT'S MOTION FOR *DE NOVO* REVIEW OF MAGISTRATE'S RELEASE ORDER**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, seeks this Court's review of the release order issued by the Honorable Magistrate Judge Zia M. Faruqui on September 2, 2025. Specifically, the Government requests that the Court grant a *de novo* review of Magistrate Judge Faruqui's denial of the Government's motion for pre-trial detention pursuant to §§ 3142(d)(1)(A)(iii) (Defendant on probation or parole) and 3142(f)(1)(E) (felony involving possession of a firearm),

Despite being just months into supervised release stemming from two unarmed carjacking convictions, Defendant Damion Barnett chose to illegally possess and obtain a firearm, outfit it with an extended magazine, and when confronted by officers, discard it into a lot in a residential alleyway. As a result, Barnett now stands before this Court charged with Unlawful Possession of a Firearm and Ammunition by a Person Convicted of a Crime Punishable for a Term Exceeding One Year (18 U.S.C. § 922(g)(1)) and Unlawful Discarding of a Firearm (D.C. Code § 22-4503.04).

Defendant's offense conduct, prior conviction, and history of non-compliance show that: (1) he cannot be trusted to follow the Court's pretrial release conditions, and (2) he will continue

to procure and expose himself to firearms, no matter any prohibitions to the contrary. Accordingly, pursuant to 18 U.S.C. § 3142(g), Defendant should be detained pending trial.

## BACKGROUND

On July 14, 2025, officers arrested the defendant, Damion Barnett, after he fled and tossed a Glock 19 pistol, loaded with 1 round in the chamber and 22 rounds in an extended magazine, into a backyard behind a residential neighborhood. Barnett illegally possessed this firearm just months into a three-year term of supervised released stemming from his 2022 carjacking conviction. After spending over two years incarcerated from 2022 to 2024, Barnett chose to illegally possess a deadly firearm and put the public at risk. Considering the factors specified under 18 U.S.C. § 3142(g), there are no conditions or combination of conditions short of detention that can ensure the safety of our community. For the following reasons, Barnett should be detained pending trial.

### I.     Procedural History

On July 15, 2025, a Complaint was filed in DC Superior Court case number 2025-CF2-08048, charging Barnett with Unlawful Possession of a Firearm; Carrying a Pistol without a License; and Unlawful Discarding of a Firearm. On July 18, 2025, a preliminary hearing was held, at which the Court found probable cause and ordered Barnett held because it could not fashion a set of release conditions that would ensure the safety of the community.

On July 30, 2025, a Complaint was filed in this Court, charging Barnett with one count of Felon in Possession under 18 U.S.C. § 922(g). An initial appearance was held on August 1, 2025, and the Government made a motion for pretrial detention. Barnett was preliminary held, and a detention hearing was set for August 5, 2025. On August 5, 2025, the detention hearing was held

but needed to be continued to September 2, 2025 for completion. On September 2, 2025, Magistrate Judge Faruqui granted the Defendant's release to home incarceration and designated the Defendant's aunt, Litisha Story, as the third-party custodian. Based on the Parole Commission issuing a follow-on warrant, Magistrate Judge Faruqui ordered the Defendant held until he is presented before this Court.

II.     **Legal Authority and Argument**

The United States seeks detention pursuant to §§ 3142(d)(1)(A)(iii) (Defendant on probation or parole) and 3142(f)(1)(E) (felony involving possession of a firearm), because the defendant is charged with possession of a firearm while on supervised release in Superior Court case number 2021-CF3-002134. The conviction in D.C. Superior Court case 2021-CF3-002134, includes two counts of attempted unarmed carjacking.

Under the Bail Reform Act, if the Court determines that "no condition or combination of conditions will reasonably assure the appearance of [a defendant] as required and the safety of any other person and the community," the Court shall order a defendant held pending trial. 18 U.S.C. § 3142(e). In determining whether any condition or combinations of conditions will assure the safety of the community, the Court weighs four factors: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) his history and characteristics; and (4) the nature and seriousness of the danger to any person or the community that would be posed by his release. *See* 18 U.S.C. § 3142(g). Further, the Court shall consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on

other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." 18 U.S.C. § 3142(g)(3)(B).

In making this determination, the "rules concerning the admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the [detention] hearing." 18 U.S.C. § 3142(f). Specifically, the presentation of hearsay evidence is permitted, and the government may proceed by proffer. *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996). Moreover, the government is not required to "spell out in precise detail how the government will prove its case at trial, nor specify exactly what sources it will use." *United States v. Martir*, 782 F.2d 1141, 1145 (2d Cir. 1986). *See also United States v. Williams*, 798 F. Supp. 34, 36 (D.D.C. 1992). A pretrial detention hearing should not be used as a discovery device, and cross-examination should be limited to the disputed issues. *See Smith*, 79 F.3d at 1210, *see Williams*, 798 F. Supp. at 36.

### A. The Nature and Circumstances of this Offense Merit Detention.

The first factor to be considered, the nature and circumstances of the offenses charged, weighs in favor of detention. As set forth below, the defendant was arrested after he discarded a pistol, loaded with an extended magazine, into a backyard in a residential community. At the time, Barnett was less than eight months into a three-year term of supervised release stemming from a 2022 conviction for attempted unarmed carjacking.

On July 14, 2025, at approximately 5:55 p.m., members of the Metropolitan Police Department's Robbery Suppression Unit were conducting gun interdiction/robbery suppression activities in the Fifth District in Patrol Service Area ("PSA") 506. The officers of the Robbery Suppression Unit were dressed in plain clothes and wearing vests with the word "POLICE" written

on the front and back clearly visible for the eye to see. In the past six months, PSA 506, which contains 1110 16th Street, NE, has had 25 reported violent crimes involving a firearm: 6 homicides, 9 assaults with dangerous weapons, and 10 robberies.

As members of the Robbery Suppression Unit were travelling in the 1100 block of 16th Street, NE, Washington D.C., the officers came upon four to five individuals standing in front of 1110 16th Street, NE. One of the individuals, later identified as Defendant Damion Barnett, was wearing bright pink shorts and a black sweatshirt and was seen smoking a white cigarette, which Officers Mark Minzak and Augustus Thomas believed to be a marijuana cigarette. Upon seeing law enforcement, Barnett handed the white cigarette off to another individual in the group wearing a white shirt and blue jeans.

As soon as Barnett passed off the cigarette, Barnett ran in the opposite direction of Officers Minzak and Thomas's vehicle on 16th Street, NE. *See Figure 1*.



*Figure 1: Barnett running on 16th Street, NE*

Sergeant Terrence Welsh, Jr. and Lieutenant Kenyon Hogans pursued Barnett in the 1100 block of 16th Street, NE. Barnett turned left onto Levis Street, NE, then into an alley. *See Figure 2*.



*Figure 2: Barnett, Circled in Red, Running in Alley*

During the course of the foot pursuit, Sergeant Walsh observed Defendant Barnett reach into his waistband area with his right hand and discard a firearm into the air. Defendant Barnett was apprehended in the rear of 1026 16th Street, NE and placed under arrest.

Officers traced Barnett's flight path in the alley off Levis Street, NE, and recovered a black Glock 19, 9mm semi-automatic firearm bearing serial #CCZU050. *See Figures 3* and *4*.

6



*Figure 3: Firearm Recovered from Alley*



*Figure 4: Closer View of Firearm*

The firearm was loaded with one round of ammunition in the chamber of the weapon. The firearm had an additional 22 rounds of ammunition in the magazine, which has a capacity of 31 rounds of ammunition. *See Figure 5*.



*Figure 5: Firearm, Magazine, and Ammunition*

Officer Minzak used a handheld Forward-Looking Infrared ("FLIR") thermal imaging device on the object and observed the entire firearm glowing which indicated heat emanating from the firearm. *See Figure 6*. The FLIR is designed to detect heat. Humans naturally generate heat, and that heat is transferred to an object when it is touched by humans and slowly dissipates when it is no longer touched.

*Figure 6: Firearm Shown through Thermal Eye Imagine Device*

A search of the Gun Registration database revealed that Defendant Barnett does not have a license to carry a pistol in the District of Columbia, and the firearm is not registered to Defendant Barnett in the District of Columbia. A further NCIC/WALES check was conducted and showed that the firearm was reported stolen by the Prince George's County Police Department on November 3, 2024.

A criminal history check of Defendant Barnett revealed that he was convicted of a prior felony charge in Washington D.C., Superior Court case number 2021-CF3-002134, which is punishable by more than one year in prison, prohibiting him from possessing a firearm. Accordingly, Defendant Barnett would have been aware that he was previously convicted of a crime punishable by a term of imprisonment exceeding one year at the time he possessed the firearm and ammunition in the instant case.

Here, the nature and circumstances of this offense weigh heavily in favor of detention. Although he is just 22 years old, Barnett chose to illegally possess a dangerous firearm—loaded with one round in the chamber and over twenty rounds in an extended magazine—and discard it

in a residential neighborhood. While this charge is a possessory offense, this court has warned against discounting the inherent dangerousness in possessing a weapon such as this. *United States v. Blackson*, No. 23-cr-25 (BAH), 2023 U.S. Dist. LEXIS 18988, at *21-22 (D.D.C. Feb. 6, 2023) (the absence of evidence of "use" "does little to detract from" the danger posed by a firearm "loaded with 19 rounds of ammunition in an extended magazine, . . . more ammunition than the gun was originally manufactured to carry, thereby increasing its potential to do greater harm" and placement "at the ready, on his person, and easily within reach"). *See also United State v. Kent*, 496 F. Supp. 3d 500, 502 (D.D.C. 2020) (holding that a defendant should be detained pretrial in part because "the firearm recovered from the defendant's person had a round already chambered, making the circumstances even more troubling"), *aff'd* (D.D.C. Nov. 5, 2020). The firearm possessed by Defendant Barnett was loaded and ready to fire over twenty rounds, and until he discarded it in a residential neighborhood, it was in close proximity to him and readily accessible. Moreover, as previously noted, the defendant was arrested while on supervised released for a 2022 carjacking conviction. As discussed in greater detail below, in that case the defendant at least insinuated that he had a firearm and pressed a cold object to the victim's head while demanding the keys to her car. The fact that the defendant committed the instant offense while on supervised release "mak[es] evident his disregard of the law forbidding possession of a firearm and automatically rais[es] concern about whether he can be trusted to comply with any conditions of pretrial release." *Blackson*, at *23-24.

      **B.**  **<u>The Weight of the Evidence Against the Defendant is Strong.</u>**

The second factor to be considered, the weight of the evidence, also weighs in favor of detention. As then-Chief Judge Howell noted at length in *Blackson*, the "weight of the evidence

should not automatically be weighed less than the remaining statutory pretrial detention factors." *Blackson*, *20. It is a "common sense consideration," because "if the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Id*.

The evidence against Defendant Barnett is substantial. Body-worn camera footage shows that officers chased Barnett down the street after he fled upon seeing cruisers approach. As officers continued to chase Barnett down the alley, Sergeant Walsh can be heard on body-worn camera footage noting that he observed Barnett reach into this waistband, pull out a firearm, and toss it to the side. Officers later discovered that firearm in the alley, and thermal imaging showed that the firearm was still emanating heat from Defendant Barnett holding it.

"[I]f the evidence against a defendant is overwhelming, credible, helpful, and important to the government's case in chief, that may increase the risk that defendant will flee to avoid future court proceedings and may indicate that the defendant is a present danger to himself or the community if the government's allegations later prove to be true." *Blackson*, 2023 WL 1778194 at *10. This is such a case, and Barnett should be detained pretrial.

### C. The Defendant's History and Characteristics Merit Detention.

As noted above, Barnett is currently on supervised release following his conviction in D.C. Superior Court case 2021-CF3-002134, in which was convicted of two counts of attempted unarmed carjacking. In the first carjacking, Defendant Barnett entered the victim's car while the victim was in the passenger seat waiting for her boyfriend, who had gone into a nearby liquor

11

store. Defendant Barnett placed a cold object to the side of the victim's head and demanded the keys to the car. Defendant Barnett then struck the victim in the chin with that object and asked for the keys again. The victim eventually handed Defendant Barnett the keys, and he drove away. The vehicle was eventually recovered when Defendant Barnett was involved in a crash while fleeing a traffic stop. A few weeks later, Defendant Barnett approached another victim in a Safeway parking lot, grabbed the victim's arm, and demanded his car keys while insinuating he was armed with a firearm. The victim gave Defendant Barnett the keys, and he drove away. Defendant Barnett eventually pled guilty to two counts of unarmed carjacking and was sentenced to 48 months of incarceration, with a three-year term of supervised release that began on November 28, 2024.

     Part of the release conditions required Defendant Barnett to report, be placed on a GPS monitor, and complete drug testing. By January 28, 2025, Defendant Barnett tested positive for Fentanyl. By February 27, 2025, an Alleged Violation Report was submitted to United States Parole Commision due to multiple positive drug tests, failure to report to supervision, and failure to report to drug testing. Defendant Barnett had positive drug tests for marijuana, cocaine, opiates, and ETG. By April 25, 2025, Barnett was deemed to have lost contact with his supervised release officer. Then, on July 14, 2025, Defendant Barnett was arrested in the instant offense, when officers saw him toss a Glock 19 pistol, loaded with 1 round in the chamber and 22 rounds in an extended magazine, into a backyard behind a residential neighborhood. In sum, within two months of being released, Defendant Barnett tested positive for drugs. Within five months, Defendant Barnett stopped reporting to his supervised release officer. Within eight months, Defendant Barnett committed a new offense.

Further, in both carjackings, Defendant Barnett was successful at least in part because he struck fear in the victims by insinuating that he had a firearm, ultimately getting them to hand him the keys to their vehicles. No matter whether he did or did not have a firearm at that time, he has now shown a willingness not only to possess a firearm, but to get one illegally, just months into his supervised release and despite court orders barring him from possessing one. He also continues to fail drug tests and has been deemed a loss of contact. In light of his brief but violent history, noncompliance with release conditions, and possession of a firearm loaded with an extended magazine in the instant case, he should not be released.

### D. **Defendant Barnett Presents a Danger to Our Community.**

The fourth and final factor, danger to any person or the community posed by Defendant Barnett's release, similarly weighs in favor of detention. "At the outset, it cannot be gainsaid that unlawful possession of a firearm that is unregistered and fully loaded, with an extended capacity magazine, carried in a position of easy, quick access poses a significant danger to other persons and the community." *Blackson*, 2023 U.S. Dist. LEXIS 18988, at *33. The charged offense involves the possession of a highly dangerous weapon loaded with a large-capacity magazine, despite the fact that the defendant is legally barred from such possession as a convicted felon, and despite being on supervised release for that felony.

Judges of this Court have consistently recognized the inherent dangerousness of carrying a concealed, loaded firearm. *See United States v. Gassaway*, 1:21-cr-00550 (RCL), ECF No. 9 (D.D.C. Sept. 16, 2021) ("This Court agrees with other courts in this district that unlawfully carrying a concealed or loaded firearm in public poses a risk of danger to the public."); *United States v. Cole*, 459 F. Supp. 3d 116, 120 (D.D.C. 2020) (noting that a loaded firearm "has the great

13

potential to escalate into violence," particularly when defendant's prior convictions indicate a predilection for violence); *United States v. Riggins*, 456 F. Supp. 3d 138, 144 (D.D.C. 2020) ("[T]he possession of a firearm, especially while seemingly on a drug such as PCP, presents a serious danger to the community."); *United States v. Howard*, No. 20-mj-181 (BAH), 2020 WL 5642288, at *3 (D.D.C. Sept. 21, 2020) ("Illegally possessing a concealed firearm in public where other people are congregated, as alleged, poses an inherent risk of danger to the community.").

While Defendant Barnett's crime in this case did not result in any direct violence against another, unlawful possession can lead to dangerous consequences, thereby underscoring the need to take such crimes seriously. Defendant Barnett's possession of a semi-automatic pistol, loaded with 1 round of ammunition in the chamber and 22 rounds in an extended magazine, and while on supervised release in this jurisdiction, plainly demonstrates his danger to the community. This fourth factor, as with all the three prior factors, weighs heavily in favor of pretrial detention.

## III.     A Third-Party Custodian Cannot Ensure the Safety of the Community

Magistrate Judge Faruqui found that the Defendant's aunt, Letita Stroy, could effectively supervise the defendant and mitigate the danger he presents. The United States respectfully disagrees.

As a threshold matter, Courts have recognized the inherent challenges faced by third-party custodians, who are essentially being asked to act like correctional officers twenty-four-hours a day for someone they care for deeply. *See* Order (ECF No. 14), *United States v. Joyner*, 22-CR-252 (TNM) (D.D.C. Aug. 3, 2022) (reversing the magistrate court's order releasing the defendant to a third-party custodian); Order (ECF No. 55), *United States v. Handy*, 22-CR-164 (RBW) (same), *aff'd*, Case No. 22-3045, D.C. Cir. (2022); Order, ECF 54, *United States v. Charles*

*Cunningham*, 23-CR-7 (JMC) (D.D.C. March 13, 2023) ("third-party custodian, no matter how competent or dedicated, cannot stand in the shoes of the defendant. Nor should a third-party custodian be cast in the role of jailer…. Mr. Cunningham's custodians cannot supervise his behavior on a 24/7 basis."); Order, ECF 18, *United States v. Trevor Wright*, 22-CR-410 (CRC) (D.D.C. Dec. 23, 2022) ("family members are not correctional officers. Nor should they be expected to play that role"); Order, ECF 10, *United States v. Steffon Frazier*, 23-CR-255 (ABJ) (D.D.C. Sept. 18, 2023) (reversing magistrate judge's decision appointing a mother as a third-party custodian in a gun possession case).

But here, the proposed release order does not account for the fact that Defendant Barnett will not actually be under Ms. Story's direct supervision. According to her testimony during the detention hearing, Ms. Stroy is a realtor and lives in Maryland. Defendant Barnett would not be staying with Ms. Stroy, since her husband does not want Defendant Barnett to live there. Instead, Defendant Barnett would be staying at property in the District that Ms. Stroy owns, with another tenant who is renting a room from Ms. Stroy and is not related to her or Defendant Barnett. Ms. Stroy also testified that this female tenant does not even know that Defendant Barnett will be living at the residence.

As Judge Howell explained in *Blackson*: "a benefit of professional detention facilities is the consistency in insuring detention conditions. Defendant's ability to obtain a fully loaded and unregistered gun while on probation, despite the family support he enjoys, underscores that the best intentions and most valiant efforts of defendant's mother to fulfill all the proposed conditions

15

provide no guarantee these conditions will be maintained to the letter for the duration, possibly many months, of defendant's pretrial proceedings." 2023 WL 1778194, at *12.

Under the current proposed release conditions, Defendant Barnett would not be released into the custody of his aunt, but rather a random roommate who has not consented to him living in the residence and is under no obligation to supervise Defendant Barnett or report potential violations. Despite Ms. Stroy's undoubtedly good intentions in offering one of her properties to Defendant Barnett, the proposed conditions would essentially convert an unknown individual into Defendant Barnett's warden, without any proper vetting or assurances from the Court. That approach does not ensure the safety of the community.

## CONCLUSION

The Government respectfully requests that the Court issue an Order overruling Magistrate Faruqui's release order and granting the Government's motion that Damion Barnett be detained pending trial.

Respectfully submitted,

JEANINE FERRIS PIRRO
UNITED STATES ATTORNEY

By: */s/ Joseph Dernbach*
    Joseph Dernbach
    D.C. Bar No. 1740516
    Special Assistant United States Attorney
    United States Attorney's Office
    for the District of Columbia
    Federal Major Crimes Section
    601 D Street, NW
    Washington, D.C. 20530

Dated: September 3, 2025